These three causes were heard together, being appeals from decrees of the late Judge of the Superior Court of Chancery for the Richmond District.
The first suit was brought by Suddarth against Robert Nelson for the purpose of reviewing a decree obtained in a former suit brought by the said Nelson against a certain John Syme, Mildred Syme, and-Suddoth; of recovering- back a sum of money paid by him the said Suddarth, under influence of that decree ; of obtaining a discharge from an obligation given by him in consequence of the award of certain arbitrators, to whose opinion he had submitted the value of so much of an estate in land, (to which the said Nelson claimed title, under the said decree,) as was in his the said Suddarth’s possession; and of setting aside so much of that decree as would have compelled him to surrender the said land to the complainant, if the matter in controversy had not been submitted to arbitration.
The second suit was brought by Nelson against Suddarth for a specific performance of the award.
The original decree, and all the consequences flowing from it, were founded on a mistaken idea of the Chancellor, that John Syme the elder was tenant by curtesy of certain lands which were entered and surveyed by his wife’s father.
The circumstances were these. — John *162 Syme the elder intermarried with Mildred Meriwether, an infant daughter of Nicholas Meriwether deceased, and his sole heiress. The said Nicholas Meriwether had made an entry for 1,600 acres of land in the then County of Goochland, now Albemarle; but he dying in the year 1741, before a patent had issued, and his widow having married Dr. Thomas Walker, that gentleman obtained it on the 28th of August, 1746, in the name of his step-daughter Mildred Meriwether. After her marriage, and while she was yet under age, the said Syme (her husband) sold the land to William Nelson, father of the appellant. She died in 1754, leaving three children, of whom John Syme the younger was the eldest and-her heir.
The conveyance from John Syme the elder to William Nelson bears date the 26th of April, 1755.
*The patent to Mildred Meriwether and conveyance from John Syme to W’illiam Nelson describe the land as 1,600 acres, by certain metes and bounds; but Nelson settled his plantation not within those limits.
Nicholas Meriwether had made another entry for 400 acres of land, which were surveyed, on the 28th of March, 1740, adjoining the said tract of 1,600 acres, and including the plantation settled by William Nelson. This entry had escaped the notice of Dr. Walker; but John Syme the younger, having attained his full age, made the discovery; and, after the establishment of the Commonwealth’s land office', had those 400 acres resurveyed, for the purpose of ascertaining their identity; and was proceeding to obtain a patent on the original survey, when he was restrained by. a caveat entered at the instance of Robert Nelson the appellant.
William Nelson the elder being then dead, and having devised the 1,600 acres of land to the appellant, he had obtained from the said John Syme the younger a deed of confirmation which neither abridged nor extended the boundaries of the original tract. William Nelson the younger (brother of the appellant) made an entry for the same 400 acres of land, had them surveyed, and sued out a caveat to prevent the emanation of a grant to the appellant; after which the appellant dismissed his caveat against John Syme, jun. and a patent issued on the 31st of July, 1788, to William Nelson, who thereupon conveyed the land to the appellant. John Syme, jun. as soon as he was informed of the dismission of the appellant’s caveat, proceeded to obtain a patent, which bears date the 20th of June, 1791, for the same 400 acres of land, on the ancient survey of his grandfather Nicholas Meriwether; stating his descent, and deriving his title through his mother; but soon afterwards sold the land to Suddarth, and put him in possession. — After ’ this sale and delivery of possession, Suddarth hearing of the claim of Nelson, refused to pay the purchase money; whereupon John Syme, jun. brought a suit in the late High Court of Chancery against Robert and William Nelson, stating his title to the said 400 acres of land; his sale thereof to Suddarth; and the manner in which the defendant William Nelson had obtained a patent for the same, and conveyed it to Robert Nelson ; which he charged to have been by fraud and collusion between the two brothers. He therefore prayed that the patent to William Nelson should be set aside and the land decreed to him; and that the defendant should account for the rents and ^profits during the time that they and their father had held possession.
The answer of Robert Nelson, stated that his father had purchased of the complainant’s father, and devised to him the defendant, who, long afterwards, discovered that 400 acres (possession of which had been delivered by the agent and guardian of the complainant’s mother, thirty years before) were surveyed for the complainant; and, thereupon, he, the defendant, had caveated the same and taken measures to obtain a patent therefor: — that, if the Court should be against him on this point, his title was still good, during the life of the complainant’s father, John Syme the elder, who had paid a valuable consideration to the complainant to induce him to confirm’ his sales.
The depositions taken in the cause proved that Dr. Walker, who was supposed to be the agent of John Syme the elder, shewed the lands to the agent of William Nelson the elder: but Dr. Walker declared that he shewed them, as the friend and not as the agent of Syme, and that he did not know the situation of the tract in dispute, till he heard it was caveated. John Syme the elder deposed that he sold the land to William Nelson the elder as described in the deed, and no other. — Another witness stated only that Dr. Walker and himself shewed the land; and that, if there had been any entry' in favour of Syme, he thought he would have known it.
John Syme, jun. having died intestate, the suit (which abated by his death) was revived on the day of March, 1793, by consent, in the names of John Syme his son, and Mildred Syme his daughter, by Nicholas Syme their next friend.
On the 18th of March, 1797, Robert Nelson brought his suit against the last mentioned John Syme, his sister Mildred, and-Suddoth.
The bill stated that John Syme the elder being seised in right of his wife sold the land in question to the complainant’s father, who devised it to the complainant; but it was discovered in 1787, that 400 acres of it had not been patented; — that, in consequence of this discovery, John Syme, jun. entered for those 400 acres; but the complainant caveated; and William Nelson the younger obtained a patent for, and conveyed the same to the complainant; that John Syme the-younger afterwards obtained a patent, and brought suit against the complainant for the same land, although the complainant ought to be considered as a purchaser of the fee-simple; but, if that were not the case, *at least for the life of John Syme the elder: that John Syme, jun. had sold to Suddoth, who refused to pay the complainant the value of the land, although when he bought of John Syme, jun. he had notice of the complainant’s right.
*163 The prayer of the bill was, therefore, that Suddoth should be compelled to deliver possession of the 400 acres to the complainant, and that the defendants should account for the rents and profits, from the time when John Sj’me, jun. obtained possession.
The answer of the defendants, John and Mildred Syme, insisted that the 400 acres of land were not comprehended in the deed from John Syme the elder to William Nelson the elder.
The exhibits filed in this cause were the patent to Mildred Meriwether for 1,600 acres of land.; a deed of release from Robert Nelson, the complainant, to John Syme, jun. for a tract of land which was mortgaged to William Nelson the elder, by John Syme the elder, as an indemnity against his wife’s title; the patent to William Nelson the younger, which was for 481 acres of land; the patent of John Syme, jun. for 400 acres; and the deed from John Syme the elder to William Nelson the elder.
These two causes came on to be heard together, and the Chancellor decreed that the patent to William Nelson the younger should be vacated, as having been obtained b3' fraud; but that John Syme the elder, "being tenant by the curtesy, his sale and conveyance to William Nelson the elder passed an estate, at least for the life of the said John Syme the elder; (which interest he had a right to sell;) and that Robert Nelson, as devisee of his father, William Nelson the elder, was entitled to hold the land for that time; that after the death of the said John Syme the elder, it was to be delivered up to John Syme the younger; but, until that event should happen, John Syme the younger should deliver possession to Robert Nelson, and account to him for the rents and profits, from the time when he had taken possession, until he should so deliver it up.
In the above decree, the sale from John Syme, jun. to Suddarth was not mentioned, nor did the name of Suddarth occur in it: yet an attachment was issued against and levied upon him, to compel him to surrender the land, and to pay the intervening profits thereof, between the time when the occupation by John Sjrme, jun. commenced, and the date of the decree. This was the first legal notice of the suit which Suddarth had, except a service of the • decree upon him. He was taken into custody, on the attachment, *by the sheriff, on whose advice he agreed to pay a certain sum of money to Robert Nelson, for the intervening profits of the land; and, moreover, engaged to pay whatever should be considered, by men chosen for the purpose, the value of the estate by the curtesy •of John Syme the elder. The former of these sums was paid before Suddarth had better advice.
Suddarth then filed the bill of review first above mentioned, making Robert Nelson, John Syme, (an infant,) by Nicholas Syme, his guardian, William Cochran and Mildred his wife, (which John Syme and Mildred were children and co-heirs of John Syme, jun. aforesaid,) and Elisha White, sheriff of Hanover, to whose management the personal estate of John Syme, jun. had been committed, parties defendants.
The answer of the defendant, John Syme, admitted the sale to the complainant, but not that all the purchase money had been paid: that of Cochran and wife referred to that of Syme: that of White the sheriff merely stated that he had no property of the estate of John Syme, jun.
Robert Nelson, in his answer, stated that the blank for the complainant’s Christian name, in the former suit, was left through want of information, and not from design; and that his surname was mistaken through ignorance: that the complainant knew of the suit, and, while it was depending, was served with a notice not to pay any money to John Syme, jun. He pleaded the decree on which the attachment issued, and stated that the complainant thereupon purchased his, the defendant’s, interest in the land, with which bargain he appeared well pleased.
The cause was heard on the bill and answer, and the followings exhibits; viz. Nelson’s receipt to Suddarth; the award of the arbitrators concerning the back rents; Nelson’s notice to Suddarth; the obligation of the latter to secure the payment of those rents: and transcripts of the records in the two suits abovementioned.
The Chancellor admitted his decree to have been erroneous, because Robert Nelson had no title to the land; declared that Suddarth was never bound thereby, because he was no party to the suit; and that the attachment against him (which occasioned the compromise with the appellant) had emanated improvidently ; and therefore directed that Robert Nelson should repay to the complainant the money he had received, (1701.) with interest from the date of the receipt; should release the obligation for rent, and pay the costs to which the complainant was subjected by 'x"the attachment, as well as the costs of the present suit. Suddarth thereupon dismissed the bill as to the other defendants. From this decree Nelson appealed to this Court.
The second appeal was from a decree rendered in a suit brought by Nelson before that just mentioned, for the purpose of enforcing the compromise above stated. The answer of Suddarth was filed after he had exhibited the bill in the suit brought by him against Nelson and others. That bill is made a part of his answer in this suit, which answer confesses the compromise, but prays that it may be set aside, because obtained from him by duress, and without an adequate knowledge on part, either of his own rights, or of those of the said Nelson. The Chancellor dismissed the bill, and Nelson in like manner appealed.
The third appeal was from a decree dismissing the bill of the appellant, in a suit brought by him against James P. Cocke. The cause was set for hearing upon the bill and answer, without a replication. Nelson filed his bill, alleging that he had sold to Cocke the tract of patented land, containing 1,600 acres, and had delivered to him, by mistake, 400 acres, (for which there was only an entry,) as part of the patented land; that John Syme the younger was entitled to the entry, after the death of his father, John Syme the elder, from whom the title to the patented land was de *164 duced to Nelson; but that Nelson was entitled to possession of the entry, during the life of John Syme the elder; that Cocke had occupied this entry for several years, and therefore rent was demanded from him.
The answer o,f Cocke stated that the entry was a part of the South Garden tract which Nelson sold to him; that on this en-trjT were all the houses of the plantation, and the first clearing on it; that Cocke believed the entry belonged to him, as possession thereof had been delivered by Nelson; and that he never should have occupied it, but for such delivery; that, upon the discovery of an adverse title to the 400 acres, Nelson insisted that they should be considered as part of the land which Cocke had bought; and, upon a reference to arbitrators, it was decided, that Cocke should allot to Nelson other four hundred acres, part of the patented land, when Nelson should be able to make a title to the entry; but if Nelson should never be able to make such title, that Cocke should retain the whole of the patented land in lieu thereof: that Nelson was not *able to make a title of the entry, and Cocke assigned to him all the rents which were due from tenants, which Nelson accepted. The affidavits of two witnesses shewed only the amount of rents which had been received. The cause having- been referred to a commissioner, he charged Cocke with the rents, and interest on the rents; both of which charges were specially excepted to.
The Chancellor dismissed the bill; whereupon Nelson again appealed.
Call, for the appellant, contended, that the patent of William Nelson the younger, being prior in date to that of John Syme the younger, should be preferred; and, therefore, that Robert Nelson’s title under it was unexceptionable; that Nelson’s title being superior to that of Suddarth, the latter was bound by the compromise founded on the decree against him, in the suit brought by Robert Nelson ; although a blank had been left for his Christian name: and, consequently, that his subsequent purchase and agreement to pay the rent were obligatory on him.
As to the case of Cocke, he said, that all parties understood that the 1,600 acres of land passed by the deed from Nelson; but, the 400 acres having been delivered by mistake, and occupied so many years by Cocke, it was but right that he should pay rent for the use of them.
Warden, for Suddarth, (after stating the case,) observed, that in the suit which gave rise to that brought by Suddarth against Nelson and others, Suddarth had been condemned in a decree, without being heard. No process was ever served upon him; nor did he ever hear of the suit till he heard of the decree. Being in the custody of the sheriff on the attachment, he had no alternative, as he supposed, but to go to prison, or submit to such terms as Nelson thought proper to prescribe. Under false impressions, both as to his own situation and the title of Nelson, he made the bargain with him, which the Chancellor had, very properly, set aside. In the former suit, there was a blank for the name of baptism, and the surname was mis-spelt. An entire misnomer is error, both in law and equity.
As to the principal point, he need only say, that John Syme the elder, having never reduced the 400 acres of land into possession during the coverture, and John Syme the younger having obtained a grant under the entry, which *had been made in favour of his mother, his father, John Syme the elder, was not. entitled to-curtesy. The Chancellor’s first decree was,, therefore, erroneous, which went to charge-Suddarth, in consequence of the estate, by the curtesy of John Syme the elder; but Che-las! decree was correct in saying that the money which had been paid by Suddarth, under the influence of that decree, should be repaid, and that he should be released from all his obligations to Nelson in consequence thereof.
As to the compromise, Suddarth was under duress, in the possession of the sheriff, whose advice he followed when it was entered into. This is the very definition of duress; and, as nothing is valid which the party does under suqh circumstances, the Chancellor’s other decree dismissing the bill of the appellant, filed to enforce that compromise, was also correct.
Call, in reply. -With respect to the main point in this cause, whether Nelson’s patent takes precedence of that obtained.by John Syme the younger, the law is clearly with us. Meriwether’s survey, on which, the patent of John Syme .the younger was founded, was made in 1740. Nelson and those under whom he claims, were in possession from 1755. This case is precisely within the principle of Johnson v. Buffington (a) and Curry v. Burns, (b) In the latter case, it is expressly said that an entry not pursued for eleven years is void. In the present case more than eleven years had elapsed; and Nelson was put in possession, under a supposed right from Syme himself. If Syme, having an old entry, did not choose to carry it into a grant, in due time, can he say that Nelson has been guilty of a fraud in attempting to get a grant, when the land had been so long in the possession of William Nelson the elder, as for a descent to have been cast on his heir?
Warden. In 1746 or 1747, Nicholas Meri-wether died: his daughter Mrs. Syme died while under 'coverture and in infancy, leaving her son John Syme the younger an infant only three years old. Besides, the war intervened, which put a stop to the issuing of patents till the establishment of the Commonwealth’s land-office. John Syme the younger was born in 1752; in 1773 he was of age, and the King never issued any .grant after May, 1774. In 1779, the Commo'nwealth’s land-office was established. Taking into view the coverture of Mrs. Syme, the infancy of her sons, John Syme the younger, and the extension of the time *granted by the Legislature for obtaining patents on surveys of land, John Syme the younger was not barred, by any limitation, from suing out a grant at the time when it issued. He referred to the case of Picket v. Dowdall, (c) *165 to shew that a younger patent founded on an older survey takes place of an older patent founded on a younger survey.
Call. The case of Curry v. Burns is decisive on this case. The register of the land-office was not authorised to issue a grant to John Syme the younger, he having abandoned his entry and survey. Syme should have caveated Nelson; and the whole question would have been whether an old entry and survey, which had been abandoned, could have been set up against an entry and survey which had been regularly made and pursued with due diligence.
The case of Nelson v. Cocke was submitted without farther argument, on the part of the appellant. Mr. Call considered it as depending on the main point in the case of Nelson v. Suddarth.
Randolph and Warden, for Cocke, contended that the cases were different. The bill demands nothing more than the curtesy of John Syme the elder. The suit was brought to recover rent from Cocke for the time he cultivated the land; on a supposition that Nelson was entitled to the curtesy of Syme. Cocke improved the 400 acres of land; Nelson thought he had sold them: Cocke thought he had bought them: the mistake of Nelson led Cocke into a mistake. It was an imposition upon Cocke for which Nelson is not entitled to relief. At the time the Court awarded to Robert Nelson the land of John Syme the elder, an account was directed in this case. The Master reported 961. to be due from Cocke for rent. He excepted to the report upon two grounds. 1st. That affidavits had been read which were taken without notice; 2dly. That interest had been allowed on 841. part of the rent; which allowance was contrary to the decisions of this Court. The Chancellor in his subsequent decree says, the former decree was erroneous, so far as it went to sa3' that Nelson was entitled to the curtesy of John Syme the elder. It has been said, in the argument of Nelson v. Suddarth, that John Syme the elder was not entitled to curtesy, because he was not seised during the life of his wife. Nelson was *never entitled to any estate in fee in this land ; and his title was founded entirely on the erroneous decree of the Chancellor. On the special circumstances of this case, Nelson is not entitled to recover. He was in possession of 2,000 acres of land, and sold 1,600 acres to Cocke. Upon delivery, he gave Cocke possession of 400 acres to which he was not entitled.
Can he then compel Cocke, who only contemplated a purchase of 1,600 acres, to pay rent for what by his own mistake, and not the fault of Cocke, was erroneously put into his possession.
Curia advisare vult.
Friday, July 3. The decrees in all three of the suits were unanimously affirmed, by the whole Court, consisting of all the Judges.
JUDGE FLEMING
delivered the following opinion.
From an attentive examination of the records in these suits, it appears to me that neither the appellant, nor either of those under whom he claims, had ever any equitable title to the 400 acres of land in question; nor a legal one, until, by a piece of artful management, not much to his credit, he got a friend to obtain a patent for it, in the year 1788, during the pendency of his caveat against the rightful owner, which he, in his answer to Syme’s bill, says, “was afterwards dismissed, because, there was found to be considerable difficultj' in bringing it to trial.” But, as I conceive, because, pending the caveat, his friend had obtained a patent for the land, which was conveyed to him.
Eet us examine his equitable title, .which he conceives tobe indubitable. His father, under whose will he claims, in the year 1755, purchased 3,560 acres of patented land contained in two grants; the one for 1,900 acres, lying in the North Garden, and the other for 1,600 acres, lying in the South Garden, and adjoining the land in controversy. This land was purchased of the late Colonel John Syme, who had therein only a life estate, in right of his wife, then an infant, not more than 15 or 16 years of age; and who, for the sum of 8001. sold the land to the late Mr. William Nelson, (father of the appellant,) and gave a mortgage of another estate to the purchaser, to secure the title at a future day; and thus defeated the inheritance of his own offspring.
*Possession of the land, so purchased, was immediately given to Mr. Nelson, who, supposing the land in question (for which there was an entry and survey in the name of Mildred Meriwether, then the infant wife of Colonel Syme), to have been included in his purchase, actually settled his people thereon— neither he nor Colonel Syme having any knowledge that such an entry and survey (which were made in the year 1740) ever existed. And this mistake of Mr. Nelson, or his agent, in settling land which of right belonged, to another, (owing entirely to their own inattention and negligence, as the boundaries of the purchased lands are minutely described in the patents,) was to give the appellant an equitable title against the infant presumptive heir of an infant feme covert; which heir had already been defeated of his inheritance of 3,500 out of thirty-nine hundred acres of land! Of what, it may be asked, has the appellant to complain? His father, under whom he claims, purchased, and supposed he had purchased, 3,500 acres of land, only, of which he was put into immediate possession, and the title .secured; and there is not even a suggestion that there is a deficiency in quantity.
The reasoning of the appellant on the subject seems to amount to this — “I have purchased, and paid for your coat, and have (through mistake, and without your knowledge) almost worn out your cloak; and am therefore entitled to that also.”
Let us now take a short chronological view of the title of John Syme, the son, who w'as father of the appellees, John Syme and Mildred Syme, (now Mildred Cochran) and heir of Mildred Meriwether, who died the wife of John Syme the elder, about the time she came of age; in whose name, and for whose benefit, the entry for 400 acres of land (now the subject of controversy) was surveyed the 22d of March, 1740. But neither of the parties had any knowledge *166 of such entry and survey until many j’ears after John Syme, the son and heir, came of age; soon after which, he, by indenture, bearing date the 1st of September, 1777, confirmed to the appellant a complete title to the lands purchased by his father of John Syme the elder, and thereb}' obtained a release of the estate mortgaged by the latter, to secure that title.
Some time in the year 1787, John Syme, the son and heir, found among the papers of his grandfather, Nicholas Meriwether, the entry and survey before mentioned, which was the first discovery he ever made of them; and, on the 8th of October, the same year, he returned them to *the register’s office, in order to obtain a patent thereon. A warrant was laid on the land, and a survey thereof made, in the name of William Nelson, the 23d of November, which was returned to the land-office the 18th of December following; and, on the 4th of April, 1788, the appellant entered a caveat against the patent of. Syme, which he says, in his answer, “was really to contest the right between them” — -and, had that been truly the case, there would have been nothing blameable in his conduct: but we have already seen, that, pending the caveat, his friend obtained a patent from the survey of November, 1787, and, soon after, made him a conveyance of the la^id. How long it was afterwards before the caveat was dismissed does not appear; but Syme did not obtain his patent until the 20th of June, 1791.
I' shall make no comments on these transactions, farther than to observe, that it is clearly my opinion that Syme’s equitable title is paramount to, and ought to supersede the legal title of the appellant, thus surreptitiously obtained; who, I conceive, never had even the shadow of equity in his favour; and he may think himself fortunate, that he has not been compelled to account for the rents and profits, whilst the land was in his occupation.
The case of Picket v. Dowdall(a) was cited in the argument, by the appellant’s counsel; but the circumstances in that case were so widely different from this, that it seems unnecessary to take further notice of it.
And upon the whole, I concur in the opinion, that all three of the decrees ought to be affirmed.

 2 Wash. 116.

 2 wash. 121.

 2 Wash. 106.

 2 wash. 106.